**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**May 27, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In re: B.P., D.P.-1, L.P., R.P., and D.P.-2**
**No. 19-0342** (Nicholas County 18-JA-106, 107, 108, 109, 110)

**MEMORANDUM DECISION**

Petitioner W.P. appeals the March 4, 2019 order of the Circuit Court of Nicholas County terminating his parental rights.[1] Respondent, West Virginia Department of Health and Human Resources (DHHR),[2] and Guardian ad litem, Denise Pettijohn, Esq., filed response briefs in support of the circuit court's termination.

Upon consideration of the standard of review, the parties' briefs, oral arguments and the record on appeal, the Court finds no substantial question of law or prejudicial error. For these reasons, a memorandum decision affirming the circuit court's decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

In August 2018, the DHHR filed a child abuse and neglect petition against Petitioner alleging that he had abandoned his five children, B.P., D.P.-1, L.P., R.P., and D.P.-2.[3] Specifically, the petition alleged that Petitioner had not contacted the children in approximately three years and had failed to provide them with financial support.[4] In

---

[1] Petitioner is represented by M. Tyler Mason, Esq. in this appeal. Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

[2] DHHR is represented by Patrick Morrisey, Attorney General, and Mindy M. Parsley, Assistant Attorney General, in this appeal.

[3] The children ranged in age from seventeen to twelve. D.P.-1, the oldest child, has now reached the age of majority, and is no longer involved in this matter.

[4] The petition also alleged that the children's biological mother, E.P., had abused and neglected the children because she had not financially supported or cared for them since approximately September 2017. According to the record, the Petitioner and E.P. were previously married, but separated in 2007 and later divorced. The petition additionally alleged that E.P.'s sixth child, H.D., who is not Petitioner's biological child, had also been abused and neglected by E.P. Although E.P.'s parental rights to all six children were also terminated in this case, she has not appealed. Because Petitioner is not

1

response to the petition, Petitioner appeared in person with counsel, and waived his right to a preliminary hearing. As such, the circuit court found that probable cause existed as to the allegations in the petition and imminent danger existed as to the physical well-being of the children.

In September 2018, the circuit court held an adjudicatory hearing. According to the court's order, Petitioner admitted to his failure to contact and support the children, although he refused to stipulate that he abandoned the children, as alleged in the petition. The court found that Petitioner was competent to enter his admissions, understood the rights and the procedures he was waiving, and intelligently, voluntarily, and knowingly waived those rights, with the assistance of counsel. The circuit court also found that Petitioner was not threatened, coerced, or promised anything in exchange for the stipulations made and accepted them. The circuit court accepted Petitioner's admissions and adjudicated him as having abused and neglected the children due to a lack of contact and support.[5] At this hearing, the DHHR opposed a post-adjudicatory improvement period for Petitioner. The guardian ad litem withheld her position on the matter until she could review the children's Child Advocacy Center interviews.

In October of 2018, the circuit court held a hearing on Petitioner's motion for a post-adjudicatory improvement period.[6] The court denied Petitioner's motion, and the matter

---

H.D.'s biological father, H.D. is not involved in this appeal.

[5] Under West Virginia Code § 49-1-201 (2019), a "neglected child" means a child:

> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;
> (B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or *absence of the child's parent* or custodian; or
> (C) "Neglected child" does not mean a child whose education is conducted within the provisions of § 18-8-1 *et seq.* of this code.

(Emphasis added).

[6] Although Petitioner's request for an improvement period was discussed during this hearing, the record does not contain any evidence that Petitioner filed a written motion

2

was set for disposition. After two dispositional hearings scheduled in December 2018 were continued at the request of the children's mother, E.P., a dispositional hearing was held in January 2019. At this hearing, the court heard testimony from Tim Meadows, a Child Protective Services Worker, who testified that the children did not wish to have contact with either parent due to the way they had been treated in the past. Mr. Meadows also testified that the Petitioner did not have sufficient housing or income for the children, and had reported he had no intention of making any effort to change that situation. The court then continued the hearing to provide the children an opportunity to testify.

At a continued hearing in February 2019, the court heard in camera testimony from D.P.-1 and B.P. D.P.-1, who was seventeen at the time, testified that she last had contact with Petitioner when she was thirteen or fourteen. She stated that following her parents' divorce, she and her sisters would see Petitioner on the weekends, and they would have to stay in a motel when visiting him. D.P.-1 reported that it had been approximately ten years since she and Petitioner had lived in the same home. D.P.-1 described instances of violence and abuse committed by the Petitioner, including an instance of alleged inappropriate touching that was investigated by the DHHR.[7] The circuit court also heard testimony from B.P., who was sixteen at the time. She also described Petitioner as absent and abusive. She stated, "He's mentally abusive to us. We're worth nothing. He told me he didn't love me anymore, that I wasn't his kid."

The circuit court also heard testimony from the Petitioner, who testified that he last saw his children in 2014, and that he was incarcerated between 2009 and 2011 and had no contact with the children at that time. When asked why the children would have testified that he was abusive, he stated that they had "been filled with lies from their mother and grandmother and other people for the past several years." Petitioner also testified that he had a one-bedroom apartment and worked twenty to twenty-five hours a week, earning approximately $700 a month. While he testified that he had made efforts to seek Social Security disability benefits for his various medical impairments,[8] Petitioner acknowledged that he could not currently care for the children and had no estimate as to when he might be able to care for them. E.P.'s hearing testimony corroborated the children's allegations

---

requesting an improvement period. At this hearing, E.P. was adjudicated as having abused and neglected the children, due to her abandonment of the children, excluding H.D., and her neglect of the educational and medical needs of all the children. The unknown father of H.D., J.N., was also identified at this hearing, and the court ordered him to submit to paternity testing. J.N. later relinquished his parental rights in March of 2019.

[7] According to the testimony of E.P., these charges were dismissed.

[8] Petitioner testified that he had a heart condition, seizures, bulging discs in his back, PTSD, and was borderline bipolar, with "paranoia and possible schizophrenia."

of abuse by the Petitioner and physical and verbal altercations that occurred between them during their marriage. She testified that once they separated in 2007, Petitioner stopped providing support for the children, and she was not granted any child support by the family court because Petitioner was not working at that time. She also testified that since their divorce, Petitioner did not provide any gifts to the children.[9]

On March 4, 2019, the circuit court entered a dispositional order terminating Petitioner's parental rights.[10] The circuit court found that the testimony of D.P.-1 and B.P. was credible "based on the testimony itself, but also on [their] mood, mannerisms, and mature attitude while testifying." In contrast, although Petitioner had denied any abusive behavior, the court did not find his testimony credible. The court also found that Petitioner had resisted participation in the improvement period;[11] that the children had consistently maintained they wanted no contact with Petitioner and had no bond with Petitioner; that Petitioner had participated in some services[12] but refused to make any "meaningful changes;" and that there were numerous unsuccessful attempts by the DHHR to contact the Petitioner.[13] So, the court determined that there was "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and the children's needs for continuity of care and caretakers is paramount, and a significant amount of time may be required to be integrated into a stable and permanent home environment." The court found that it was in the best interests of the children to terminate Petitioner's parental rights.[14] This appeal followed.

---

[9] Although Petitioner now alleges, despite his admission to a lack of contact with the children, that E.P. disappeared with the children and left him unable to contact them or provide them any support, the record is clear that Petitioner never contacted the appropriate authorities to determine the children's whereabouts.

[10] In this same order, the circuit court also terminated E.P.'s parental rights.

[11] To the extent that the circuit court denied Petitioner's request for an improvement period, this finding does not comport with the record before us.

[12] Petitioner was provided parenting and life skills services with Second Chances.

[13] This particular finding also lacks support in the record on appeal. While the record indicates that DHHR made numerous unsuccessful attempts to reach the mother, E.P., there is nothing in the record demonstrating that DHHR had difficulty contacting Petitioner during the pendency of this action.

[14] D.P.-1 has reached the age of majority, and the guardian ad litem reported that she has not been able to maintain contact with D.P.-1 since her emancipation. B.P. (now age 17), is currently placed with the foster family that adopted her brother, H.D. She is scheduled to graduate high school in 2020, and her permanency plan is a guardianship. L.P. (now age 16), R.P. (now age 15), and D.P.-2 (now age 14) are placed with a foster

4

The Court reviews the circuit court's order under the following standard:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S*., 196 W.Va. 223, 470 S.E.2d 177 (1996).[15]

Petitioner first asserts that the circuit court abused its discretion in failing to grant his motion for a post-adjudicatory improvement period and in terminating his parental rights. He argues that he admitted to the non-aggravated, neglectful behavior, expressed a desire to fully participate in an improvement period, and participated in the services he was offered throughout the case. He maintains that he proved by clear and convincing evidence that he would meaningfully participate in an improvement period and that it was in the best interest of the children that the court grant him an opportunity to successfully complete an improvement period.

West Virginia Code § 49-4-610(2)(A)(B) outlines the standard that applies to consideration of a post-adjudicatory improvement period by a circuit court, and provides:

> (2) Post-adjudicatory improvement period. -- After finding that a child is an abused or neglected child pursuant to section six hundred one of this article, a court *may* grant a respondent an improvement period of a period not to exceed

---

family in Hico, West Virginia, and their permanency plan is adoption by that family. The children have sibling visitation and remain in regular contact.

[15] Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011).

six months when:

> (A) The respondent files a written motion requesting the improvement period;
>
> (B) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period[.][16]

This Court has held that "the granting of an improvement period is within the circuit court's discretion."[17] This Court has also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'"[18] So, the circuit court has discretion to deny an improvement period when no improvement is likely.[19] In sum, a circuit court may proceed to terminate parental rights under West Virginia Code § 49-4-604 "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected."[20]

Here, the circuit court properly denied Petitioner's motion for a post-adjudicatory improvement period because he failed to demonstrate that he would make any immediately discernable changes to correct the conditions of abuse and neglect that led to the filing of the petition. While Petitioner claims that he had a genuine intent to participate in an improvement period and that he participated in the services offered to him, Mr. Meadows testified that Petitioner lived in a one-bedroom apartment and had a part-time job, and he stated that he had no plans of changing those arrangements to provide for his five children. Although Petitioner testified at his dispositional hearing that he had confirmed with his property manager that he could obtain a bigger apartment if he received custody of his daughters, and that he had also applied for Social Security disability benefits, he admitted that he could not currently care for the children and had no estimate as to when he might be able to care for them. The Petitioner also had no bond with the children due to his

---

[16] Emphasis added.

[17] *In re Tonija M.*, 212 W. Va. 444, 448, 573 S.E.2d 354, 359 (2002).

[18] *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

[19] *In re Tonija M.*, 212 W. Va. at 448, 573 S.E.2d at 359.

[20] Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)).

extended absence in their lives, and the children testified in an in camera hearing that they did not want to have any contact with him.[21]

Petitioner takes issue with the circuit court's consideration of D.P.-1 and B.P.'s testimony regarding past physical abuse, arguing that if the court were concerned about his alleged anger and the possibility of physical abuse, the terms of an improvement period could have easily incorporated anger management counseling and battering intervention and prevention program classes. But, the court's consideration of this testimony was not to establish that any physical abuse had occurred in an attempt to rectify that issue.[22] Rather, given the girls' ages, the court's consideration of this testimony was proper under West Virginia Code § 49-4-604(b)(6)(C) (2019), which provides that "the court shall give consideration to the wishes of a child over fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." This Court has held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. . . ."[23] We find that the circuit court properly considered the best interests of the children in denying Petitioner a post-adjudicatory improvement period.

Next, Petitioner argues that the circuit court clearly erred in terminating his parental rights on the basis that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future because it inaccurately determined that he did not participate in services. Petitioner argues that the DHHR's own testimony showed that he consistently participated in services, and that his inability to meaningfully participate by obtaining a larger home was due to his lack of income and could have been remedied in the near future. Petitioner contends that the size of his home was never the subject of his adjudication, and his inability to comply with his service provider's suggestion to move into a larger home was solely due to a lack of financial means.

While Petitioner cites to West Virginia Code § 49-1-201(a) to assert that termination was improper because of his lack of financial means,[24] his argument misses the point.

---

[21] Additionally, there is no evidence in the record demonstrating that Petitioner filed a written motion for a post-adjudicatory improvement period, as required by West Virginia Code § 49-4-610(2)(A). *See* n. 6 *supra*.

[22] As stated above, physical abuse was not alleged in the petition in this case.

[23] Syl. Pt. 4, in part, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)).

[24] *See* footnote 5 *supra*.

Petitioner's lack of adequate housing was not the reason Petitioner was adjudicated as neglectful. Rather, the circuit court found him to be neglectful due to his lack of contact, or absence, in the children's lives for three years prior to the initiation of this case, and he admitted this fact prior to his adjudication.[25] While the issue of adequate housing was considered by the court during the dispositional phase of this case in efforts to achieve permanency, rather than during the adjudicatory phase, the record is clear that Petitioner was aware that he needed to obtain adequate housing but he failed to do so. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are permitted to terminate parental rights upon a finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected *in the near future*" and that termination is necessary for the children's welfare.[26] And, West Virginia Code § 49-4-604(c) (2019) provides that the phrase "no reasonable likelihood that conditions of abuse and neglect can substantially be corrected" means that "the abusing adult or adults have demonstrated an *inadequate capacity to solve the problems of abuse or neglect on their own or with help*."[27] Here, the record established that Petitioner demonstrated an inadequate capacity to provide the children with adequate housing in the near future.

The circuit court properly found that Petitioner was unwilling to make any meaningful changes to his life to support his children emotionally or financially. While the record reflects that Petitioner generally participated in the services provided to him, Mr. Meadows testified that Petitioner failed to meaningfully participate because he "reject[ed] any suggestions that the provider . . . offer[ed] to him to improve his situation." Mr. Meadows testified that in the four months since the adjudicatory hearing had taken place, Petitioner had made no attempts to get a bigger apartment, did not have sufficient income to be able to afford another apartment, and Petitioner had "stated that he didn't have any interest in . . . moving at that time." And, although Petitioner testified at the dispositional hearing that he had applied for Social Security disability benefits, he even admitted that he could not estimate when he would be able to care for his children.

Because the children in the case were nearing the age of majority, time was of the essence for purposes of achieving permanency in this case. Given Petitioner's demonstrated inability to make meaningful changes to his life and to estimate when he would be able to care for his teenage children, coupled with the court's consideration of the wishes of D.P.-1 and B.P. that they did not want to have a relationship with their father,

---

[25] *See* W. Va. Code § 49-1-201(b) (2019) (defining a neglected child as one "[w]ho is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance *or absence* of the child's parent or custodian.") (emphasis added.)

[26] Emphasis added.

[27] Emphasis added.

the circuit court did not clearly err in determining that there was no reasonable likelihood Petitioner could substantially correct the conditions of abuse or neglect in the near future, and that termination was necessary for the children's welfare.

For the foregoing reasons, we affirm the circuit court's March 4, 2019 order terminating the Petitioner's parental rights.

Affirmed.

**ISSUED**: May 27, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison